THE PEOPLE OF THE STATE OF NEW YORK ᴇx ʀᴇʟ. JAMES McKONE, Appellant, *v.* ANDREW H. GREEN, Comptroller, ᴇᴛᴄ., ᴀɴᴅ ALLAN CAMPBELL, Commissioner, ᴇᴛᴄ., Respondents.

*City of New York — bond for execution of contract with — insufficient sureties — permission of commissioner of public works to substitute others — when it may be revoked.*

Where a party, desiring to enter into a contract with the city of New York, furnishes with his bid a bond to secure its faithful performance, the sureties to which are decided by the comptroller to be insufficient, whereupon the commissioner of public works consents to the substitution of other sureties in their place, *held,* that until the comptroller has actually passed upon the sufficiency of the new sureties, the commissioner of public works was authorized to recall and revoke his consent to the substitution of the new sureties.

Appeal from an order of the Special Term, denying a motion for a peremptory *mandamus.*

In October, 1873, the commissioner of public works advertised for proposals for regulating, etc., Madison avenue, from Ninety-ninth to One Hundred and Fifth streets. The relator was the lowest bidder, and the contract was awarded to him ; the contract price being about $120,410.

The original sureties proposed by the relator were William Gilfoyle and Robert Prior. Without signing the contract the commissioner of public works transmitted the proposal of the relator to the comptroller for his examination of said sureties.

The comptroller declined to act upon the sureties, for the reason, among others, that by law the property on the line of the improvement could be assessed for one-half only of its value as fixed by the tax department, and, as claimed by the comptroller, the contract price exceeded one-half the value of said property as so fixed.

The relator thereupon commenced a proceeding in the Court of Common Pleas to compel the comptroller to act upon the sureties. The Special Term refused the writ, but on appeal the General Term ordered the writ to issue, and the Court of Appeals affirmed the decision of the General Term.

The case is reported in 50 Howard's Reports, 500. No opinion was given by the Court of Appeals.

Subsequently the comptroller, in pursuance of such decision, examined such original sureties, and decided that they were insufficient. The relator then, with the consent of the commissioner of public works, proposed as new sureties, Charles G. Waterbury and James Deering.

The comptroller having failed to act upon such substituted sureties, the relator commenced the present proceeding to compel the commissioner of public works to execute the contract, and to accept said Waterbury and Deering as sureties thereon, and to transmit said contract and agreement of said sureties to the comptroller, and to compel the comptroller to approve said sureties, and then transmit the papers to the commissioner of public works.

The proceeding was commenced by the service of an order to show cause why a *mandamus* should not issue to the commissioner of public works and the comptroller, requiring them to take the action above mentioned. In such order to show cause, was also embodied an order restraining the comptroller from refusing to approve said sureties, and from transmitting the agreement of said sureties without his approval to the commissioner of public works.

While the proceeding was pending in court, and some time before it was brought to a hearing, the commissioner of public works reconsidered the question of giving his consent to such substitution of sureties, and addressed a letter to the comptroller, requesting the return of the papers, but the comptroller was unable to comply with such a request on account of the order of the court above mentioned, which restrained him from so doing. Before any further action could be taken by the commissioner of public works in reference to the withdrawal of said consent, the relator's attorney applied for and obtained from his honor, Judge Barrett, an order restraining the commissioner of public works from taking any steps towards the withdrawal of his consent, until after the hearing and determination of the motion for a *mandamus*.

The counsel to the corporation thereupon, on an affidavit of the commissioner of public works that he desired to reconsider the matter, and that the work could now be relet for half the price at which McKone had proposed to do it, obtained an order of the court requir-

ing the relator to show cause why the above-mentioned order, restraining the commissioner of public works, should not be set aside; the court also directed that such last-mentioned order to show cause should be heard before, or at the same time with the original motion for a *mandamus*.

*James A. Deering*, for the appellant.

*George P. Andrews*, for the respondents.

DAVIS, P. J. :

The court below denied the motion for a peremptory *mandamus* in this case, for the reasons assigned in the following opinion :

"LAWRENCE, J. The point upon which this case turns is as to the right of the commissioner of public works, after once having consented to the substitution of a surety in the place of a surety originally offered by the bidder, to withdraw such consent before the comptroller has approved of the sureties.

"In this case, after a peremptory *mandamus* had issued out of the Court of Common Pleas, directing the comptroller to pass upon the adequacy of the relator's sureties, it was found that both of the original sureties were not adequate, and, thereupon, with the consent of the commissioner of public works, Messrs. Waterbury and Deering were proposed as new sureties by the relator, and this application was then made by the relator for a writ of peremptory *mandamus* commanding the comptroller to approve of the adequacy and sufficiency of such sureties, and the commissioner of public works to enter into and execute the contract for regulating and grading, etc., Madison avenue, which is mentioned in the affidavit. By the order to show cause, the comptroller was enjoined, in the meantime, from refusing to approve of the sureties and from transmitting the agreement of the sureties to the commissioner of public works without his approval. By a subsequent order of the court, the commissioner of public works was directed to take no action or proceeding in relation to said contract, it being alleged that the comptroller, in order to avoid the injunction, had requested the commissioner of public works to erase from the relator's bid certain words, and to withdraw the bid or proposal of the relator from the comptroller's possession.

" By an order afterwards made, on the application of the commissioner of public works, through the counsel to the corporation, the relator was directed to show cause why the injunction against the said commissioner should not be vacated. The counsel of the relator contends that after the commissioner of public works has once assented to the change or substitution of sureties he cannot withdraw his assent. I am unable to accede to this view; and I do not think that the cases which counsel has cited sustain his position. The power to consent to such substitution is conferred by the twenty-seventh section, article 2, of chapter 7 of the Revised Ordinances of 1866, which section prescribed : ' That, every contract for supplies or work, etc., * * * shall be accompanied by a bond in the penalty mentioned in the proposals therefor, executed by the persons consenting to become bound as sureties, as provided in section 20, or by such other persons as shall be substituted therefor, with the consent of the heads of departments making such contracts,' etc.

" No obligation is imposed upon the head of department to give such consent.

" At the time the relator applied to the commissioner of public works for leave to substitute Messrs. Waterbury and Deering for Messrs. Gilfoyle and Prior, although he was the lowest bidder, he was not the lowest bidder " who had given security for the faithful performance of his contract in the manner prescribed and required by the ordinance." Nor had the adequacy and sufficiency of his surety been approved by the comptroller. The relator was, therefore, in default; whether through his own fault or through that of the comptroller, it is not necessary now to determine.

" Conceding all that the learned counsel for the relator, in his most elaborate and instructive brief, claims as to the rights of the lowest bidder, whether under the charter of 1873, or the act of 1861, it is clear that the lowest bidder must give adequate security, and that such adequate security must be passed upon and approved by the comptroller before the lowest bidder becomes absolutely and of right entitled to the contract. Now, in this case it appears that after the commissioner of public works has consented to the substitution of the new sureties in the place and stead of the old sureties, and before the approval of the adequacy and sufficiency of the new sureties by the

comptroller, the commissioner became desirous of reconsidering his approval of, or consent to such substitution, and, in his affidavit, he states that the reason why he desired so to reconsider his approval was because the work can now be done for $60,000, whereas, if the relator be allowed to execute the same under his bid, the expenditure, exclusive of surveyor's and engineer's fees, will amount to $120,000. The consent for the substitution of new sureties for those originally proposed, is an act of grace on the part of the head of the department. It rests upon no new consideration, and it appears to me that if the head of the department becomes satisfied before the act is consummated by the comptroller's approval of the sureties, that he has acted unwisely or unadvisedly, it should be, and it is, within his power to withdraw his consent. To illustrate : If the position of the learned counsel for the relator is correct, if the commissioner of public works had ascertained within five minutes after he had consented to the substitution of the sureties that they were worthless, he could not have revoked his consent, and the city would have been obliged to enter into the contract unless the comptroller discovered the insolvency or irresponsibility of the sureties and refused to approve of them. I cannot conceive that such is a fair and reasonable interpretation of the provisions of the ordinance.

"It has been before observed that the cases cited by the learned counsel for the relator, do not appear to sustain the counsel's position, that the commissioner of public works had no right to recall his consent when once given. Upon examination of those cases, I am of the opinion that it will be found that they were all cases in which third parties, on the faith of the act sought to be undone or revoked, had entered into obligations and agreements into which they otherwise would not have entered.

" There the principle of estoppel applies, but in this case the relator contracted no obligations, and he entered into no new contract on the faith of the consent of the commissioner of public works, to the substitution of the new sureties. He had made his bid several years before and his sureties had been determined by the comptroller to be inadequate. When he came before the commissioner of public works asking that new and other sureties might be accepted, he offered no new consideration, and none passed from him to the city.

"Upon principle, therefore, and upon the authorities cited, as I understand, I am of the opinion that until the comptroller has actually passed upon the sufficiency of the new sureties, the commissioner of public works was authorized to recall and revoke his consent to the substitution of sureties, as I cannot see that the plaintiff, by such revocation, will lose any legal rights to which he was entitled at the time the consent was obtained, and as it is apparent that much injury may ensue to those who would be assessed for the work if executed, I reach the conclusion that the order enjoining the commissioner should be vacated.

"The motion for a *mandamus* might, perhaps, be properly denied on the ground that the granting of the writ is much within the discretion of the court, and that regarding the expense to which property owners might be subjected by the execution of the contract in question, it would be a wise exercise of the discretion of the court to refuse the writ and put the relator to his action against the corporation for damages. I prefer, however, to rest this case on the grounds heretofore stated; and as it is apparent that the commissioner desires to reconsider his consent, it follows:

"First. That the order restraining him from such reconsideration should be vacated.

"Second. That no case is made out for granting a *mandamus*, either to compel the comptroller to approve of the new sureties, or the commissioner of public works to execute the contract.

"Motion is therefore denied, with ten dollars costs."

We adopt this opinion as our own, so far as relates to the questions upon which the court below disposed of the motion.

The writ of *mandamus* is not a writ of right. It is one over which the court, in the exercise of sound discretion, has full control. In addition to the grounds upon which the learned judge below based his decision, we are of opinion that the writ in this case should be denied, as a proper exercise of judicial discretion:

First. Because the relator, if entitled to the contract, has another remedy to recover the damages actually sustained by him by the refusal of the city to enter into the contract; and the measure of the damages which would compensate him in such case would be far less injurious to the city, and especially to the persons on whom the expense of the work would largely be thrown, if the contract

were entered into, than to proceed under the changed circumstances to do the work at the heavy prices stipulated in his proposal. The relator should be turned over to his action for damages.

Second. Because it is extremely doubtful whether there is not such a departure from the ordinance in making up the specifications set forth in the contract, as to render the action of the commissioner of public works unauthorized and illegal. An item, the expense of which cannot of course be ascertained on the face of the papers before us, is included in the estimates and proposal which the ordinance does not embrace and for which the city had no right to contract. This question was not, however, suggested below, nor has it been discussed here, but it arises very plainly upon the papers before us. Certainly no court should be called upon to issue a peremptory *mandamus*, to compel the execution of a contract which, on its face, exceeds the authority conferred by the ordinance of the common council.

We are of opinion that the order of the court below should be affirmed, with ten dollars costs besides disbursements.

DANIELS, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ

Order affirmed, with ten dollars costs, besides disbursements.